### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **TINA JOHNSON,** | ) | Case No. 17-82868 |
| | ) | |
| Debtor. | ) | Judge Thomas M. Lynch |

| | | |
|---|---|---|
| **PATRICK S. LAYNG,** | ) | |
| **UNITED STATES TRUSTEE** | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. |
| | ) | |
| vs. | ) | |
| | ) | |
| **MICHAEL C. BURR,** | ) | |
| **JAAFAR LAW GROUP PLLC,** | ) | |
| **FAIRMAX LAW,** | ) | |
| **MICHAEL JAAFAR,** | ) | |
| **DAVID IENNA,** | ) | |
| **CHRISTINA BANYON, and** | ) | |
| **DAVID CARTER**, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>COMPLAINT</u>

1.     The plaintiff Patrick S. Layng, United States Trustee Region 11, ("the Plaintiff") by his attorney, Debra L. Schneider, brings this action against defendants Attorney Michael Burr, Jaafar Law Group PLLC, Fairmax Law, Attorney Michael Jaafar, Attorney David Ienna, Attorney Christina Banyon and Attorney David Carter ("the Defendants") respectfully requesting that the Court issue an Order to:

(a)     require all Defendants to disclose the specific amount of funds each received for charges for services as well as their fee-sharing arrangements in this case pursuant to 11 U.S.C. §§ 105 and 329 and Fed. R. Bankr. P. 2016;

(b)    cancel any and all fee agreements between the Debtor and the Defendants, and require

the Defendants to disgorge to the Debtor all funds received pursuant to 11 U.S.C.

§§ 105, 329, and 526;

(c)    issue injunctive relief ordering Defendants to cease and desist from future acts or

omissions that violate 11 U.S.C. § 526, including:

(1)    making false representations regarding client review, approval and signature

under penalty of perjury of documents filed with the Court;

(2)    making false representations or forging of signatures, including electronic

signatures, on documents filed with the Court;

(3)    failing to perform services provided for in contracts;

(4)    failing to properly train and supervise support staff;

(5)    failing to properly train and supervise contract attorneys including "of

counsel" and appearance counsel;

(6)    failing to properly communicate with assisted persons regarding the limited

services that will be provided for the $0.00 payment down and failing to

properly explain the nature of those remaining services that are integral to

completing a bankruptcy case but are charged separately; and

(7)    failing to obtain true informed consent from an assisted person regarding the

services the debt relief agency will or won't provide and the risks and benefits

of filing bankruptcy under this separated services compensation arrangement.

(d)    issue injunctive relief ordering Defendants cease and desist from future acts or

omissions that violate 11 U.S.C. § 707(b)(4) including:

2

      (1)     making false representations regarding client review, approval and signatures on documents filed with the Court;

      (2)     making false representations about or forging of signatures, including electronic signatures, on documents filed with the Court; and

      (3)     failing to properly train and supervise contract attorneys including "of counsel" and appearance counsel.

(e)     require Defendant Burr to self-report his conduct to the Illinois ARDC;

(f)     require Defendants Burr, Banyon and Carter to each attend three hours of ethics/professional responsibility training and certify completion of training to this Court;

(g)     suspend Defendant Burr's ECF filing privileges until he has completed ethics/professional responsibility training and has certified his completion to this Court; and

(h)     take such other action as the Court deems necessary to deter the above-described conduct in the future.

## I.     Jurisdiction and Venue

2.     This adversary proceeding is related to the chapter 7 case of Tina Johnson, case no. 17-82868, pending in the United States Bankruptcy Court for the Northern District of Illinois, Western Division.

3.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.     This Complaint is based on 11 U.S.C. §§ 105, 329, and 526; Fed. R. Bank. P. 2016 and 2017.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The Plaintiff has standing to be heard under 11 U.S.C. § 307.   The Plaintiff consents to the entry of a final order by the United States Bankruptcy Court of the Northern District of Illinois.

## II.     *Identities of Relevant Entities and Parties*

8.      The Debtor, Tina Johnson ("the Debtor"), is an individual consumer debtor who filed a voluntary petition under Chapter 7 of Title 11 of the United States Code on December 5, 2017.   The Debtor is an assisted person whose debts are primarily consumer debts as defined in 11 U.S.C. § 101(3) and (8).

9.      Jaafar Law Group PLLC is a Domestic Professional Limited Liability Corporation registered in the State of Michigan.

10.     "Fairmax Law" and "Fairmax" are trade names of Jaafar Law Group.

11.     On December 1, 2015, a Michigan law firm Jaafar & Mahdi Law Group P.C. registered "Fairmax Law" as an assumed name with the Michigan Secretary of State.   On March 21, 2016, Jaafar & Mahdi Law Group P.C. terminated the assumed name "Fairmax Law".   On March 23, 2016, "Fairmax Law, PLLC" was registered with the Michigan Secretary of State as a Domestic Professional Limited Liability Company.   It changed its name to Jaafar Law Group PLLC on February 17, 2017.

12.     The corporate headquarters of Jaafar Law Group is located at 23400 Michigan Avenue, Suite 110, Dearborn Michigan 48124.   The website of www.fairmaxlaw.com lists eleven attorneys.   Attorney Michael Jaafar ("Jaafar") is listed as the Founder; Attorney David Ienna ("Ienna") is listed as a Partner and President; and Attorney Mike Burr ("Burr") is listed as being "of counsel".   **Exhibit A.**

13.     Jaafar is an attorney licensed to practice law in the State of Michigan.   He is not licensed to practice law in the State of Illinois but was admitted to the District Court for the Northern District of Illinois on July 6, 2017.   **Exhibit B.**

14.     Ienna is an attorney licensed to practice law in the State of Michigan.   He is not licensed to practice law in the State of Illinois but upon information and belief may be admitted to the District Court for the Northern District of Illinois.

15.     Burr in his capacity as an attorney at Fairmax/Jaafar Law Group represents the Debtor, as the petition referenced Burr's bar credentials and was filed using Burr's Electronic Case Filing ("ECF") login and password.   Burr is admitted to practice law in Illinois and works for Robert J. Adams & Associates.

16.     Robert J. Adams & Associates is a Chicago area law firm specializing in bankruptcy.

17.     Burr entered into an "Of Counsel Agreement" with Jaafar Law Group PLLC d/b/a Fairmax Law on September 1, 2017.   **Exhibit C.**

18.     The contract between Jaafar Law Group PLLC and Burr provides for Burr, as an individual, to receive a percentage on all net revenues from each case where he is listed as attorney of record.   Net revenues are defined as revenues collected by the firm on a case, minus out-of-pocket costs of the firm for that case.

19.     According to its website, Fairmax maintains an office at 1333 Burr Ridge Parkway, Suite 200, Burr Ridge IL 60527 ("Fairmax's Illinois Office").[1]

20.     On information and belief, Fairmax's Illinois Office does not employ any administrative staff; all administrative staff work from Fairmax's Michigan office.

---

[1]  In e-mail correspondence to the Debtor and Banyon, Burr indicates there is also a Fairmax office at 55 E. Monroe Street, Suite 3800, Chicago, IL 60603.

21.   Hereafter, Jaafar Law Group PLLC, Fairmax Law and Fairmax will be referred to as "Jaafar/Fairmax".

22.   Attorney Christina Banyon ("Banyon") is licensed to practice law in the State of Illinois.   She is employed at CKB Lawyers, LLC, an Illinois law firm.

23.   Attorney David H. Carter ("Carter") is licensed to practice law in the State of Illinois. He is employed at the Law Office of David H. Carter, an Illinois law firm.

24.   Each of the Defendants is a "debt relief agency" as that term is defined in 11 U.S.C. § 101(12A).

### III.     Procedural Background, Fee Agreements, Unbundled Services and Document Production

25.   Debtor's chapter 7 petition was filed on December 1, 2017.    The initial Rule 2016 disclosure was filed a month later, on January 3, 2018, disclosing that Burr agreed to accept $1,422.00 for legal services but had not received payment to date. Dkt. 15, **Exhibit D.**

26.   The 2016 disclosure excluded a number of services. *See* **Exhibit D.**

27.   The filed Rule 2016(b) declaration did not include a copy of Burr's written fee agreement with the Debtor as required by Local Rule 2016-1.   The United States Trustee filed a motion to compel Burr to file his fee agreement with the Court. Dkt. 26.   The hearing on the United States Trustee's motion was scheduled for January 31, 2018.

28.   One day prior to the scheduled court hearing on the United States Trustee's motion to compel, Burr filed a Second Rule 2016(b) declaration with an attached copy of his fee agreement. Dkt. 28, **Exhibit E.**

29.   The Second Rule 2016 disclosure included a new paragraph identifying a factoring/financing arrangement with a third party finance company.

30. Also attached to the Second Rule 2016 disclosure were two contracts between the Debtor and Jaafar/Fairmax;[2] one titled *Contract for Pre-petition Legal Services in a Chapter 7 Bankruptcy Case* DocuSigned by the Debtor on November 17, 2017("Prepetition Agreement"), and the other titled *Contract for Post-petition Legal Services in a Chapter 7 Bankruptcy Case* signed by the Debtor on December 31, 2017 ("Post-petition Agreement).   Dkt. 28-1 and 28-2, **Exhibits F and G.**

31. Prepetition Agreement - The Pre-petition Agreement states that the Debtor retains Jaafar/Fairmax and will be charged $0 for "meeting and consulting with me as needed; detailed analysis of my client questionnaire; and preparation and filing of a Chapter 7 Voluntary Petition, Statement about Social Security Numbers, Pre-filing Credit Counseling Briefing Certificate and List of Creditors." The Pre-Petition Agreement also states that once the bankruptcy is filed, the Debtor understands that they are not obligated to pay any fees for pre-petition services and any unpaid pre-petition fees will be discharged.   The Pre-Petition Agreement then gives the Debtor three options for post-petition representation: a) retaining the firm to represent her for $1,422.00 plus costs for the credit counseling, credit report, and filing fee; b) retaining other counsel; or c) proceeding *pro se.*

32. A factoring agreement with a third party finance company, BK Billing, is described in the Prepetition fee agreement under the Post-petition option of retaining Jaafar/Fairmax to represent the Debtor post-petition.

33. Post-petition Agreement -  The Post-petition Agreement states that the Debtor retains Jaafar/Fairmax for the following services:

- Preparation and filing of the Statement of Financial Affairs and Schedules;
- Preparation for and attendance at the Section 341 Meeting of Creditors;
- Review of any redemption agreements;
- Review of any reaffirmation agreements;

---

[2] The contracts are with Jaafar Law Group PLLC and do not reference Fairmax Law.

- Follow through with case administration and monitoring; and
- Conduct a post-discharge review of credit report to ensure accurate reporting.

34.    Additional fees are charged for IRS transcripts, reaffirmation agreements, lease assumption agreements and the second credit counseling course.   The Post-petition agreement also gives Jaafar/Fairmax 50% of all garnishment monies received post-filing and an attorney's lien on those funds.

35.    The factoring agreement with BK Billing is not mentioned in the Post-petition fee agreement.

36.    After this Second Rule 2016 Disclosure with attached Pre- and Post-petition agreements was filed on January 30, 2018, the information in the filed fee agreements raised further questions for the Court and the United States Trustee; therefore, the United States Trustee e-mailed Burr requesting time records, a record of payments made by or on behalf of the Debtor, and copies of all agreements between Burr's firm, the Debtor and the factoring entity.

37.    Failing to receive any response to the United States Trustee's request for further information, on February 9, 2018, the United States Trustee filed his second Motion to Compel the production of those documents.

38.    On February 15, 2018, in response to the United States Trustee's Second Motion to Compel, Jaafar provided the United States Trustee with the Accounts Receivable Assignment Agreement with BK Billing, **Exhibit H,** the Debtor's Pre-Petition Services Agreement, **Exhibit F,** a Recurring Payment Authorization and Consent Form signed by the Debtor on December 13, 2017, **Exhibit I**[3]**,** and Debtor's Post-Petition Services Agreement, **Exhibit G.**

---

[3] Redacted by the U.S. Trustee to protect personally identifiable information per Fed.R.Bank. P. 9037.

39.    The Accounts Receivable Assignment Agreement states that BK Billing, LLC is a Utah limited liability company and third party finance company that offers accounts receivable factoring and the purchase of accounts receivable.   Jaafar/Fairmax entered into the contract with BK Billing on November 6, 2017.   **Exhibit H**.

40.    In further response to the United States Trustee's Second Motion to Compel, on February 16, 2018, Burr produced to the United States Trustee an Itemization of Time Spent by Jaafar/Fairmax.   **Exhibit J.**   In producing that document, Burr advised that his firm does not normally keep contemporaneous time records.

41.    On March 12, 2018, Burr filed a Supplemental Rule 2016 Disclosure of Compensation of Attorney for Debtor.  Dkt. 38, **Exhibit K.**  The Supplemental Disclosure explained that Debtor entered into a post-petition bankruptcy services agreement for $1800 payable in monthly payments of $150; that the accounts receivable was sold to BK Billing for a payment of $1350 plus the rights to additional payment of $270; and that $335 of this compensation had been reimbursed back to the Debtor for the filing fee which she had paid herself.

42.    The Supplemental Disclosure further stated that Banyon covered the debtor's §341 meeting and was paid $50 for that coverage.

43.    Following two hearings on the United States Motion to Compel, an Order was entered on April 23, 2018 granting the relief requested and ordering production by April 27, 2018. Dkt. 44.   When no additional documents were provided by April 27, 2018, the United States Trustee's office placed a telephone call to Burr on April 30, 2018, inquiring whether further documents would be provided.

44.     On April 30, 2018, Burr provided the United States Trustee with a copy of his "Of Counsel

Agreement" with Jaafar/Fairmax on September 1, 2017. **Exhibit C.** Burr also provided a

screen shot of Jaafar's admission to the Northern District of Illinois, **Exhibit L**, and e-mail

correspondence of his agreement with Banyon, **Exhibit M.** Lastly, he provided another

Recurring Payment Authorization and Consent Form, this one signed by the Debtor and dated

January 24, 2018. **Exhibit N.**[4]

45.     On May 14, 2018, Burr provided documentary proof of the refund of the $335 filing fee from

Jaafar/Fairmax to Tina Johnson, check number 1059, dated March 13, 2018.

46.     On May 18, 2018, Burr sent three separate e-mails to the United States Trustee that included

the invoice and payment made to Banyon, **Exhibit O,** and a comprehensive compilation of

his inbox providing everything related to Debtor Tina Johnson, **Exhibit P**[5].

### *IV.     Factual Record*

47.     For ease of reference the following timeline is provided:

- **November 17, 2017** – Debtor retains Jaafar/Fairmax and DocuSigns prepetition contract.
- **December 1, 2017** – Debtor meets with Burr and signs the signature page of Petition, SOFA, Schedules, Means Test, and Statement of Intention even though the documents are not complete.
- **December 4 & 5, 2017** – Burr consults with Ienna regarding preferred procedure for filing a "No Money Down" case. Ienna also directs Burr to use Ienna's sample 2016(b) language.
- **December 5, 2017** – Skeletal petition filed.
- **December 13, 2017**- Debtor signs Recurring Payment Authorization and Consent Form allowing Jaafar/Fairmax or BK Billing to draw on her bank account.
- **December 31, 2017** – Post-petition contract signed by Debtor and second Recurring Payment Authorization and Consent Form signed allowing Jaafar/Fairmax or BK Billing to draw on her bank account.
- **January 2, 2018** – Debtor receives e-mail from Burr notifying her of 341 meeting

---

[4] Redacted by the U.S. Trustee to protect personally identifiable information per Fed.R.Bank. P. 9037.

[5] Exhibit P consists of only select e-mails from the May 18, 2018, document production of Burr which consisted of more than 300 pages, much of which is duplicative.

10

address, time and location.   No mention that he will not be there.   Burr again seeks guidance from Ienna regarding filing documents in this case.

- **January 3, 2018** – Schedules, Means Test, Statement of Intention and SOFA filed. Not reviewed with Debtor; no signature.   Signature pages filed are the undated pages that the Debtor signed on December 1, 2017.
- **January 8, 2018** – Burr e-mails Banyon for coverage of 341 meeting.
- **January 9, 2018** – 341 meeting.   Debtor meets Carter. First time that Debtor sees Schedules and SOFA that were filed on her behalf.
- **January 19 - May 18, 2018** – The United States Trustee conducts discovery as outlined above.
- **May 14, 2018** – Burr sends Jaafar and Ienna an email in which he admits that the itemization he provided to the U.S. Trustee contains two false statements.

**SECTION 341 MEETING OF CREDITORS HELD ON JANUARY 9, 2018**

48.     The Debtor appeared on January 9, 2018, for her meeting of creditors. Based upon the Debtor's Rule 2004 examination testimony, the §341 meeting recording, and e-mail verification from Banyon to Burr, the attorney that attended the meeting of creditors with the Debtor was Defendant Carter.

49.     At the January 9, 2018, meeting of creditors, Trustee James Stevens asked the Debtor when she signed all of her bankruptcy documents.   The Debtor testified that she signed everything on the day she met with attorney Burr in the beginning of December.   The Debtor testified that she did not know why the Schedules were not filed until January 3, 2018, when her case was filed on December 5, 2017.

50.     Trustee Stevens expressed concern that Burr was not present.   Carter was completely unprepared to answer the questions raised by the Trustee and stated that he hadn't printed the petition and only brought the 341 notice with him to the meeting of creditors. 341 Recording at 05:25-06:20.

## RULE 2004 EXAMINATION OF DEBTOR, TINA JOHNSON

### A.  Debtor's Initial Contacts With Administrative Staff in Fairmax's Michigan Office

51.     A Rule 2004 examination of the Debtor was conducted on April 4, 2018.   Burr attended representing the Debtor.   The Debtor brought documents to the examination and provided copies of e-mail correspondence following the examination.   **Exhibit Q.**[6]

52.     The Debtor testified that she first contacted Jaafar/Fairmax by telephone on October 30, 2017.   The Debtor testified that she called a telephone number that she had seen on a billboard in the Chicago area advertising inexpensive bankruptcy services by an entity named Fairmax Law.[7]   She received an e-mail confirmation setting up a telephone appointment to speak with an attorney.   **Exhibit Q:** October 30, 2017, E-mail from Fairmax Law, Subject: Fairmax Law Telephone appointment Reminder.

53.     On October 31, 2017, the Debtor spoke with an unknown individual at Jaafar/Fairmax and later received an e-mail confirmation asking her to view and DocuSign a Chapter 7 Services Agreement.   **Exhibit Q:** E-mail from Fairmax Law dated October 31, 2017, Subject: Reminder: Please DocuSign: Chapter 7 Services Agreement.

54.     On November 9, 2017, the Debtor received another e-mail reminder "to get started with your Bankruptcy & pull your credit reports" confirming a November 16, 2017, appointment.   The e-mail advised "You only need $75 to get started…."   **Exhibit Q:** E-mail from Fairmax Law dated November 9, 2017, Subject: Fairmax Law Telephone Appointment Reminder.

---

[6] Duplicate e-mails were removed.
[7] On information and belief, the telephone number transmits calls to Jaafar/Fairmax's Headquarters in Dearborn Michigan, not Jaafar/Fairmax's Illinois Office.

55.   On November 17, 2017, the Debtor spoke telephonically with receptionist Raven Thames, who works in the Jaafar/Fairmax Michigan office.   Ms. Thames discussed various fee options and how to get a case filed, sent the Debtor a pre-petition fee agreement, and set up an appointment for the Debtor to meet with Burr in his office in Illinois.   **Exhibit J:** Attorney Michael C. Burr's Itemization of Time Spent by Jaafar/Fairmax.

56.   The Debtor received a follow-up e-mail from Jaafar/Fairmax on November 17, 2017, asking her to DocuSign the Pre-petition fee agreement.   **Exhibit Q:** E-mail from Fairmax Law dated November 17, 2017, Subject: Lets [sic] Get Started! Please DocuSign: Pre-Petition Fee Agreement.

57.   Although the Debtor did not have a copy of the pre-petition contract for services in her possession and does not recall seeing it, she testified that she "DocuSigned" it on November 17, 2017.   **Exhibit R:** Transcript of Rule 2004 Examination ("TR"), Pages 23-27; 30-33.

58.   Even though the Debtor testified that she DocuSigned the pre-petition contract, her Rule 2004 testimony made it clear that she did not comprehend it but merely understood that it would start the chapter 7 process.   **Exhibit R:** TR. Pages 29-31.

59.   The pre-petition contract is the same contract attached to the Second Rule 2016 disclosure described in paragraphs 28 - 30, *supra*.   **Exhibit F.**

60.   The Debtor received a second e-mail on November 17, 2017, requesting that she print and fill out the document and bring the documents requested.   **Exhibit Q:** E-mail from Fairmax Law dated November 17, 2017, Subject: Please Docusign: Your promises.pdf, PRINT THIS!! IT IS EXACTLY WHAT YOU NEED TO DO NOW.

**B.  The Debtor Provided Her "Wet Signature" On Only One Occasion, Dec. 1, 2017**

61.     The Debtor met with Burr on December 1, 2017, at the Burr Ridge office of Jaafar/Fairmax.
No one else was present at the Jaafar/Fairmax Illinois Office when the Debtor met with Burr.
Upon information and belief, Burr presented to the Debtor the signature pages of the petition,
schedules, statement of intention, SOFA and means test, which she signed even though they
were not completed. The Debtor did not date the signature pages.   **Exhibit R:** TR. Pages 39-
40, 46-47.

62.     The Debtor believed that all the necessary bankruptcy documents to complete her filing were
filed on December 1, 2017.   **Exhibit R:** TR. Pages 48, 50-51, 58.

63.     On December 5, 2017, a voluntary petition under chapter 7 of Title 11 of the United States
Code was filed with the Court indicating that Burr was Debtor's counsel.   The wet signature
pages of the Debtor were undated; however, the petition contained the "/s/" electronic
signature of Burr and the Debtor and reflected signature dates of December 5, 2017.

64.     The Debtor signed all documents on December 1, 2017, and did not sign any documents on
December 5, 2017 (the date the petition was filed, e-signed and dated.  Debtor's "wet"
signature pages were also filed that day, but not dated).   **Exhibit R:** TR. Page 43, 45, 48-53.

**C.  The Debtor Had Never Seen the Schedules That Were Filed on Her Behalf on
January 3, 2018, Until They Were Presented to Her at the Meeting of Creditors**

65.     The Debtor was completely unaware that her Schedules and Statement of Financial Affairs
were not filed until January 3, 2018, just days prior to the January 9 meeting of creditors.
**Exhibit R:** TR. Page 52.

66.   Burr did not review the Schedules and Statement of Financial Affairs with the Debtor prior
      to filing, nor did the Debtor sign the Schedules and Statement of Financial Affairs on
      January 3, 2018, (the date the remaining schedules were filed, but not signed or dated.   "Wet"
      signature pages were also filed on January 3, 2018, but not dated).   **Exhibit R**: TR. Pages 64-
      67.

67.   At the Rule 2004 examination, the Debtor testified that she had never seen the typed schedules
      that were filed on her behalf until January 9, 2018, when they were presented to her by Trustee
      Stevens at the section 341 meeting of creditors.   She acknowledged that these documents
      were unfamiliar to her and were unsigned.   **Exhibit R**: TR. Pages 64-67.

### D.  The Debtor Had No Understanding of the Pre- and Post-Petition Contracts

68.   During her Rule 2004 examination, the Debtor testified that no one explained the difference
      between pre-petition legal work and post-petition legal work.   **Exhibit R:** TR. Page 63.

69.   The Debtor was unaware that her bankruptcy filing was incomplete; therefore she had no idea
      that her Schedules and Statement of Financial Affairs had not been filed until after she
      executed a post-petition fee agreement and executed another recurring payment authorization
      and consent form.   **Exhibit R:** TR. Pages 48, 52, 58, 60-61, 67.

70.   The Debtor was also unaware that she was to pay her bankruptcy fees to BK Billing, a third
      party unrelated to Jaafar/Fairmax.   **Exhibit R:** TR. Pages 32, 52-53.   She had no idea that
      Jaafar/Fairmax may have delayed the filing of the remaining schedules until she set up her
      monthly ACH payment to BK Billing and signed the Post-Petition Contract of
      Jaafar/Fairmax. **Exhibit R:** TR. Page 67.

71.  On December 13, 2017, the Debtor signed a Recurring Payment Authorization and Consent Form allowing BK Billing to deduct $150 monthly from her bank account with Fifth Third Bank and faxed the document to Jaafar/Fairmax.   **Exhibit I**; **Exhibit R:** TR. Page 57-58.

72.  On December 31, 2017, the Debtor signed the Post-petition Services Agreement and returned it to Jaafar/Fairmax.   **Exhibit G**; **Exhibit R:** TR. Page 59-62.

### E.  Attorney Michael Burr Did Not Attend the Meeting of Creditors With the Debtor

73.  The Debtor was first notified about the creditor meeting by her attorney when she received an e-mail from Burr on January 2, 2018, telling her the meeting of creditors was to be held on January 9, 2018.   **Exhibit Q**.

74.  Although the Post-petition services agreement with Jaafar/Fairmax, included preparation for and attendance at the 341 meeting of creditors, it did not mention an appearance by coverage counsel, nor did Burr's January 2nd e-mail indicate that he would not be attending the creditor meeting with her.

75.  No one from Jaafar/Fairmax contacted the Debtor in advance of the meeting to tell her that Burr would not be attending the meeting of creditors with her.   **Exhibit R:** TR. Page 69.

76.  Debtor testified that an attorney who was in the building in which the 341 meeting of creditors took place attended the meeting with her.   She did not know his name.   **Exhibit R:** TR. Pages 68-70.   Upon information and belief, the attorney that attended the meeting of creditors with the Debtor was Carter. 341 Recording.

77.  The attorney who appeared at the meeting of creditors did not indicate to the Debtor that he was with the Jaafar/Fairmax firm and did not indicate any association with Banyon.   **Exhibit R:** TR. Page 69-71.

16

78.   Although Banyon's name is disclosed in the Supplemental Rule 2016 Disclosure of Compensation as having attended the meeting of creditors, the Debtor did not know Banyon. **Exhibit R:** TR. Pages 12-13, 42, 69-70.

79.   The Debtor did not pay the attorney that appeared at the meeting of creditors and does not know who paid him.   **Exhibit R:** TR. Page 70.

80.   The attorney who appeared at the meeting of creditors spent approximately five minutes with the Debtor just prior to the meeting.   He did not demonstrate any specific knowledge of the Debtor's case but "explained that he was filling in."   **Exhibit R:** TR. Pages 70-71.

81.   Upon information and belief, Carter did not report the outcome of the 341 meeting to Burr. Carter and Burr had no direct communication, and Burr did not even know Carter's name until Banyon provided it months later, on April 30, 2018.   **Exhibit P.**

82.   Neither Banyon nor Carter filed a Disclosure of Compensation pursuant to Rule 2016.

### F.  <u>Payment to BK Billing</u>

83.   At the Rule 2004 examination, the Debtor provided proof that she made one payment on February 27, 2018, of $1,800.00 to BK Billing.   **Exhibit S; Exhibit R:** TR. Page 72-74.   As stated above, Debtor testified that initially she was not told that she would be paying a third party (BK Billing) rather than Jaafar/Fairmax or Burr.   She assumed Jaafar/Fairmax worked through BK Billing for their billing, and did not understand the account had been sold to BK Billing.   TR. Pages 12, 20, 32, 52-53, 72.

84.   It wasn't until after the Debtor advised Jaafar/Fairmax that she wished to pay her fees in full versus a monthly payment that she was referred to BK Billing for payment.   She issued an electronic check to BK Billing in the amount of $1,800 on February 27, 2018, for payment in full. **Exhibit S.**

85.  The Debtor testified that she also paid the filing fee in full at the end of February[8]  **Exhibit R:** TR. Page 20.  Dkt. 35.

### ATTORNEY DAVID IENNA'S E-MAIL DIRECTIONS

86.  The comprehensive compilation of e-mails Burr provided to the United States Trustee on May 18, 2018, demonstrates that Ienna, a Michigan attorney not licensed in Illinois, was directing the document filing in the Debtor's bankruptcy case and verifies that schedules, statements and other documents were being withheld until the Debtor signed an ACH agreement and the Post-petition fee agreement.  **Exhibit P:** Pages 2-8, E-mails between Burr, Jaafar/Fairmax Paralegal and Ienna dated December 5, 2017.

87.  The e-mails Burr provided to the United States Trustee on May 18, 2018, also indicate that Ienna provided some of the information to Burr for the Time Itemization that Burr subsequently provided to the United States Trustee.  **Exhibit P**: Page 16, E-mail from Ienna to Burr dated February 14, 2018.

88.  The e-mails verify that Carter appeared at the meeting of creditors but that Burr did not know who appeared until Banyon provided the information on April 30, 2018. **Exhibit P**: Page 18, E-mail from Banyon to Burr dated April 30, 2018.

89.  The e-mails also verify that Burr's Time Itemization contained false information that was intentionally misleading.  See **Exhibit P**: Page 19, E-mail from Burr to Ienna dated May 14, 2018.  Burr specifically states that "items around 12/29 and 1/2/18 are the ones with the misstatements."

---

[8] The docket reflects installment payments of the filing fee of $83.75 on January 16th and 29th, and $167.50 on February 26, 2018.  Debtor then paid BK Billing the full $1,800 on February 27, 2018.  Jaafar/Fairmax refunded $335 to the Debtor on March 13, 2018.

## ATTORNEY MICHAEL BURR'S TIME ITEMIZATION

90.     Upon information and belief, the Itemization of Time Spent that Burr provided to the United
States Trustee on February 16, 2018, contains false and purposely misleading information.
**Exhibit J.**

91.     The Itemization contains time entries that do not comport with the emails and other
documents dated on the same dates, and appear to be, at the very least, inaccurate. Specifically,
although the Itemization contains time entries that make it appear as though Burr had been
working on bankruptcy schedules and making efforts to have the Debtor return to the office
for review of her paperwork and for signatures, that was not the reality.   Rather, as explained
below, the emails between Burr and the Debtor during that time period focus instead on Burr's
attempts to obtain the payment authorization from the Debtor and a signed Post-petition fee
agreement.   Taken together, the inaccurate time records, the email communications between
Burr and the Debtor, and the timing of the filing of the documents, strongly suggest that Burr
was intentionally holding off on filing the Debtor's Schedules and Statement of Financial
Affairs until that was accomplished.   Upon information and belief, he was focused on the
financial concerns of Jaafar/Fairmax and was not waiting for her to review and sign her
bankruptcy schedules and SOFA, because he actually never provided them to her or reviewed
them with her in advance of filing.

92.     For example:

(a)      The Debtor received an e-mail from Burr on December 10, 2017, telling her that "in
order to do the no money down option you have to sign 2 agreements after the case
is filed."   His e-mail goes on to state that the first agreement "reiterates the attorney
fees and costs as discussed.   There are several spots for your initials and then a

signature line at the bottom.   Please fill it out and return it to us as soon as possible. The 2nd document is an authorization to deduct the $150 per month from your account." The first document he is talking about is the Post-petition fee agreement. **Exhibit G.**

(b)  This e-mail, which is strictly focused on getting payment related documents signed, is in stark contrast with the December 10, 2017, time entries Burr submitted to the United States Trustee in which he purports to be preparing the Schedules, Statement of Financial Affairs, and e-mailing the Debtor about post-petition papers and signatures needed.   **Exhibit J.**

(c)  On December 29, 2017, Burr sent the Debtor an e-mail telling her that Jaafar/Fairmax received the authorization to deduct money from her account but had not yet received the signed post-petition fee agreement.   **Exhibit Q**.   However, Burr's December 29, 2017, Time Itemization describes this action as "E-mailed client about need for everything to be signed."   **Exhibit J**.   Burr's May 14, 2018 email to Ienna identifies this time entry (and possibly the next, as described below) as "misstatements."

(d)  On December 30, 2017, Burr sent the Debtor an e-mail saying "Really need to hear from you." **Exhibit Q**.   Burr's Time Itemization states, "Follow up e-mail and phone call about need for papers to be returned."   **Exhibit J**.

(e)  The next day (December 31, 2017) the Debtor faxed the signed fee agreement to Fairmax.   Then on January 2, 2018, without having reviewed the bankruptcy schedules and statements with the Debtor, according to his Time Itemization Burr advised Jaafar/Fairmax staff that it was "okay to proceed with filing remaining papers".   **Exhibit J**.   Burr's May 14, 2018, email to Ienna identifies this time entry as

20

containing "misstatements."   According to the Time Itemization entry of Linda Jaafar, the schedules were still in draft form on January 3, 2018. **Exhibit J**. Nevertheless, the unsigned documents were filed on January 3, 2018, using Burr's Electronic Case Filing ("ECF") login and password.

93.   In addition, the Time Itemization provides a list of names of individuals that performed work on the Debtor's case.  All support staff listed are claimed to be paralegals.  A telephone discussion with Jaafar revealed that only one of the individuals named, Prestina Winston, is a paralegal.  The other four named "paralegals" are actually receptionists, and all persons that are listed as having performed work on the Debtor's case, with the exception of Burr, are physically located in the Jaafar/Fairmax Michigan office.

**RELATED CONDUCT**

94.   Jaafar has informed the United States Trustee that Jaafar/Fairmax is not accepting new cases in the Northern District of Illinois and has removed the billboards.

95.   Burr has informed the United States Trustee that there were only two Jaafar/Fairmax cases that he filed in the Northern District of Illinois that had the zero down fee arrangement and BK Billing assignment; this case and that of Derrell Givens, Case No. 18-02665.   Burr represents that all other Jaafar/Fairmax chapter 7 cases filed required full payment of fees in advance of filing.

96.   However, Burr's Illinois law firm, Robert J. Adams and Associates, is now advertising on craigslist "No Money Down Bankruptcy" for chapters 7 and 13.   **Exhibit T**.

97.   Upon information and belief, Burr and Jaafar/Fairmax support staff have used the ECF system and filed documents in the underlying case and in other cases in the Northern District

of Illinois falsely purporting to have been reviewed and signed by the Debtors.  By way of example and not limitation see **Exhibit U**.

98.     Upon information and belief the Defendants have made untrue statements regarding signatures in multiple documents filed with the Bankruptcy Court for the Northern District of Illinois that strongly indicate the lack of review by the Debtor and have engaged in this clear and consistent pattern and practice of making untrue statements and affixing signatures on documents filed with other bankruptcy courts.

## COUNT 1: DISGORGEMENT OF FEES UNDER 11 U.S.C. §§ 105(a) AND 329(a)

99.     The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

100.    Section 329(a) of the Code provides in applicable part that:

(a)     Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment was made after one year before the date of the filing of the petition, for services rendered or be rendered in contemplation of or in connection with the case by such attorney and the source of such compensation.

101.    All attorneys representing a debtor in a bankruptcy case are required to "file with the court a statement" regarding the compensation they were paid. 11 U.S.C. § 329(a); *see also* Fed. R. Bankr. P. 2016.   The precise nature of the fee arrangement must be disclosed, not merely the identity of the ultimate owner of the funds.

102.    Each of the named Defendants had an obligation to ensure the filing of an accurate statement under section 329(a) and Rule 2016(b).

103.    The Jaafar/Fairmax Defendants' initial disclosures failed to disclose completely and accurately the payments made for services rendered or to be rendered in connection with this case and the source of such compensation.

104.  The Jaafar/Fairmax Defendants' initial disclosures failed to completely and accurately disclose the fee-sharing arrangement with Banyon and Carter for an appearance at the Debtor's meeting of creditors, and Carter's appearance has never been properly disclosed.

105.  Defendants Carter and Banyon have failed to file Rule 2016 disclosures.

106.  The Jaafar/Fairmax Defendants also failed to initially disclose the arrangement with BK Billing in the post-petition agreement with the Debtor, failed to disclose this arrangement in the initial Rule 2016 disclosure, and failed to inform the Debtor and obtain informed consent to the arrangement as the Debtor mistakenly believed that BK Billing was part of Jaafar/Fairmax and Burr.

107.  Section 105(a) of the Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

108.  Pursuant to 11 U.S.C. §§ 329(a) and 105(a) and Fed.R.Bankr.P. 2016, Plaintiff respectfully requests that the Court issue an order canceling the fee agreements between the Debtor and the Defendants; and require the Defendants to disclose and disgorge all fees for failing to make timely and sufficient disclosures, failure to disclose all additional attorney's involvement, and failure to disclose the relationship with BK Billing.

## COUNT 2: DISGORGEMENT OF FEES UNDER 11 U.S.C §§ 105(a) AND 329(b)

109.  The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

110.  11 U.S.C. § 329(b) permits the court to cancel an agreement and order the return of funds to the extent the compensation exceeds the reasonable value of such services.

111.  Section 329 reflects Congress' recognition that payments by a debtor to his or her attorney present a "serious potential for overreaching by the debtor's attorney" and that such payments

should therefore be subjected to "careful scrutiny."   H.R. Rep. No. 95– 595, at 329 (1977)

(reprinted in 1978 U.S.C.C.A.N. 5963, 6285).

112.    Courts have determined that compensation is excessive and agreements should be cancelled

based on violations of ethical rules, including rules regarding conflicts of interest.   *In re Martin*,

197 B.R. 120, 128 (Bankr. D. CO. 1996); *In re Grimmett*, 2017 Bankr. LEXIS 1492 at *32-*33

(Bankr. D. ID June 5, 2017); *see generally*, *In re Seare*, 493 B.R. 158 (Bankr. D. Nev. 2013).

113.    Rule 1.7(a)(2) of the Illinois Rules of Professional Conduct provide that a conflict of interest

exists if the representation of one or more clients will be materially limited by a personal

interest of a lawyer.   Outside the bankruptcy context, a fee agreement providing for the

payment of attorneys' fees over time creates no conflict.   The intervention of bankruptcy,

however, changes the analysis.   The obligation to pay fees under a pre-petition agreement is

generally discharged.   *See, e.g., Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005); *In re Fickling*,

361 F.3d 685 (2nd Cir. 2004); and *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125 (7th Cir.

2003).

114.    A debtor's interest in obtaining the broadest possible discharge conflicts with the attorney's

self interest in collecting prepetition fees.   *See In re Martin*, 197 B.R. at 128-29.

Jaafar/Fairmax and Burr's attempt to shift the dischargeable pre-petition obligation to a

collectible post-petition obligation does not effectively address this conflict of interest.

115.    The bifurcated fee structure used by Jaafar/Fairmax and Burr conflicts with the duty to

adequately represent a client and conflicts with the client's interests.   Because the bifurcated

fee structure denies compensation for pre-petition services, it has the logical and practical

effect of discouraging attorneys from performing adequate pre-petition services and limiting

the time and effort spent on such services.   Thus, the structure either impairs the necessary

pre-petition investigation and analysis required by Fed.R.Bankr.P. 9011 or encourages the deceptive labeling of pre-filing services as post-filing services. This is not done to serve the interests of a client. Rather, it is done to prevent the compensation for these services from being discharged and to facilitate the collection of such compensation.

116. The funding and collection assistance provided by BK Billing also creates a conflicting self-interest requiring a client to give informed consent. The pertinent aspects of that fee arrangement were not adequately disclosed.

117. In addition to the bifurcated fee structure, the fee disclosures filed in this case purport to divide the services counsel will consent to perform for the fees disclosed, from those for which they will charge the Debtor additional fees, a practice sometimes called "unbundling." Many of the services excluded from the fee agreements constitute services that are normal, ordinary, and fundamental aspects of the process that are reasonably required of professionals who represent consumers in chapter 7 proceedings.

118. Although attorneys are allowed to limit the scope of their representation, the limitations must be reasonable, and the client must give informed consent after full disclosure. A debtor must truly understand what they bargain away in the context of limited bankruptcy representation.

119. Regardless of whether the numerous exclusions were provided in writing, it is clear in this case that the Defendants or their non-legal telephonic support staff failed to provide sufficient details to the Debtor, and likely have failed to provide information to other consumer debtors sufficient to obtain informed consent as to what is being excluded from their representation.

120. On information and belief, Jaafar and/or Ienna drafted the language used in the fee agreements and such language is standard language in virtually all of Jaafar/Fairmax's disclosures through at least December 2017.

121.    The Court should order the return of the entire payment made by the Debtor because any fee is excessive and unreasonable in light of the misconduct of the Defendants, particularly the Defendants' a) failure to obtain Debtor's signatures on the Schedules and Statement of Financial Affairs; b) failure to review the Schedules and Statement of Financial Affairs with Debtor prior to filing with the Court; c) failure to file the schedules in a timely manner; d) failure to maintain time records; and e) failure to properly represent the debtor at the 341 meeting of creditors all justify cancellation of the agreements and denial of compensation under 11 U.S.C. § 329(b).

122.    Section 105(a) of the Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

123.    Pursuant to 11 U.S.C. §§ 329(b) and 105(a) and Fed.R.Bankr.P. 2016, in light of the foregoing, Plaintiff respectfully requests that the Court order the Defendants to disgorge all fees as unreasonable.

## COUNT 3: VOIDING OF THE FEE AGREEMENT PURSUANT TO 11 U.S.C. §§ 105(a) AND 526(c)(1) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(1)

124.    The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

125.    Section 526 (a)(1) of the Code provides in applicable part that:

(a)    A debt relief agency shall not—

(1)    fail to perform any service that such agency informed an assisted person of prospective assisted person it would provide in connection with a case or proceeding under this title;

11 U.S.C. 526(a)(1).

126.   Section 526 is self-executing, and the Court retains all necessary authority to enforce its requirement(s). *See* 11 U.S.C. § 105(a).

127.   Section 526(c)(1) of the Code provides in applicable part that:

> Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirement of this section […] shall be void and may not be enforced by any Federal or State court or by any person, other than such assisted person.

> 11 U.S.C. § 526(c)(1).

128.   The Defendants Jaafar/Fairmax and Burr violated section 526(a)(1) when they failed to review the Debtor's Schedules, Means Test, Statement of Intention and Statement of Financial Affairs with her prior to filing them on January 3, 2018.

129.   The Defendants Jaafar/Fairmax and Burr violated section 526(a)(1) when they failed to timely file the Debtor's schedules, statements and other documents.

130.   The Defendants Jaafar/Fairmax, and Burr violated section 526(a)(1) by failing to "prepare for and attend the 341 meeting of creditors" as set forth in their Post-petition Agreement. Instead, they hired appearance counsel to provide this service, without the Debtor's knowledge or permission.

131.   Therefore, Defendants violated section 526(a)(1) and the fee agreement should be voided pursuant to 11 U.S.C. § 105(a) and § 526(c)(1).

### <u>COUNT 4: VOIDING OF THE FEE AGREEMENT PURSUANT TO 11 U.S.C. §§ 105(a) AND 526(c)(1) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(2)</u>

132.   The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

133.  Section 526 (a)(2) of the Code provides in applicable part that:

(a)  A debt relief agency shall not—

  (2) make any statement […] in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable case, should have been known by such agency to be untrue or misleading;[…]

11 U.S.C. § 526(a)(2)

134.  Section 526 is self-executing, and the Court retains all necessary authority to enforce its requirement(s). *See* 11 U.S.C. § 105(a).

135.  Section 526(c)(1) of the Code provides in applicable part that:

Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirement of this section […] shall be void and may not be enforced by any Federal or State court or by any person, other than such assisted person.

11 U.S.C. § 526(c)(1).

136.  The Defendants Jaafar/Fairmax and Burr violated section 526(a)(2) of the Code by intentionally making untrue statements in documents filed in the underlying case including, without limitation, by filing the petition, schedules and electronic declaration that falsely represent the Debtor's review and signature.

137.  The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr violated section 526(a)(2) by failing to exercise "reasonable care" by allowing the filing of false documents that were known or "should have been known" to not have been reviewed nor signed by the Debtor; such documents improperly purporting to have been reviewed, signed, and declared to be true and correct under penalty of perjury.

138.  The Defendants Jaafar/Fairmax, Ienna and Jaafar violated section 526(a)(2) by failing to exercise "reasonable care" in failing to properly supervise "Of Counsel" attorneys, specifically Defendant Burr, by allowing the filing of false documents that were known or "should have

been known" to not have been reviewed nor signed by the Debtor, even though such documents were purported to have been reviewed, signed, and declared to be true and correct under penalty of perjury.

139.    Therefore, Defendants violated section 526(a)(2) and the fee agreement should be voided pursuant to 11 U.S.C. § 526(c)(1).

**COUNT 5: VOIDING OF THE FEE AGREEMENT PURSUANT TO
11 U.S.C. §§ 105(a) AND 526(c)(1) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(3)**

140.    The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

141.    Section 526 (a)(3) of the Code provides in applicable part that:

(a)        A debt relief agency shall not—

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to –
(A) the services such agency will provide to such person; or
(B) the benefits and risks that may result if such person becomes a debtor in a case under this title;

11 U.S.C. §526(a)(3)

142.    Section 526 is self-executing, and the Court retains all necessary authority to enforce its requirement(s). *See* 11 U.S.C. § 105(a).

143.    Section 526(c)(1) of the Code provides in applicable part that:

Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirement of this section […] shall be void and may not be enforced by any Federal or State court or by any person, other than such assisted person.

11 U.S.C. § 526(c)(1).

144.    The Defendants Jaafar/Fairmax, Ienna, Jaafar and Burr violated section 526(a)(3) and failed to supervise support staff and counsel in their communications with the Debtor. Defendants

failed to obtain true informed consent by misrepresenting or intentionally omitting information in their conversations with the Debtor regarding the limitations of the services they would provide, the unbundling aspect of their contracts, and the benefits, risks and adverse consequences of the Debtor's failure to agree to their Post-petition services contract.

145.    In light of the craigslist advertisement offering "no money down" bankruptcy that references chapter 7 and stopping "debt collectors in their tracks for zero money," Defendant Burr may be continuing to violate section 526 by failing to obtain true informed consent and continuing the practice of unbundling services with his Illinois law practice as an attorney with Robert J. Adams and Associates.

146.    The Defendants Jaafar/Fairmax, Jaafar, Burr, Banyon and Carter violated section 526(a)(3) by misrepresenting that Burr or a Jaafar/Fairmax attorney would attend the meeting of creditors, and failing to advise the Debtor that no one from Jaafar/Fairmax would be attending the meeting of creditors with her, and failing to inform the Debtor that she would be accompanied at the meeting of creditors by an attorney who had no knowledge of her case.

147.    The Defendants Jaafar/Fairmax Jaafar, Ienna, Burr, Banyon and Carter violated section 526(a)(3) by intentionally omitting information and failing to disclose to the Debtor the identity and affiliation of the individual who would be appearing at the meeting of creditors and their lack of familiarity with her case.  Both Banyon and Carter have failed to file Rule 2016 disclosures in the underlying case.

148.    The Defendants Jaafar/Fairmax, Jaafar, Burr and Ienna violated section 526(a)(3) by misrepresenting or intentionally omitting information from the Debtor by filing documents with the bankruptcy court that she had never reviewed or signed, and failing to review those documents with her in advance of the meeting of creditors.

149. The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr violated section 526(a)(3) by failing to timely file the Debtor's schedules, statements and other documents or inform her of this.

150. Therefore, Defendants have violated section 526(a)(3) and the fee agreements should be voided pursuant to 11 U.S.C. §§ 105(a) and 526(c)(1).

**COUNT 6: ISSUANCE OF AN INJUNCTION PURSUANT TO
11 U.S.C. §§ 105(a) AND 526(c)(5) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(1)**

151. The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

152. Section 526(c)(5) of the Code provides in applicable part that:

Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal and State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern and practice of violating this section, the court may— (A) enjoin the violation of such section; or (B) impose an appropriate civil penalty against such persons.

11 U.S.C. § 526(c)(5).

153. As described above, Defendants violated section 526(a)(1) of the Code, insofar as they failed to perform services they informed the Debtor they would provide in the underlying case, including services that are reasonably understood to be included in any contract for bankruptcy representation between a bankruptcy attorney and an assisted person. With conscious effort and reckless disregard to the Debtor's needs and their professional responsibilities, the Defendants Jaafar/Fairmax, and Burr violated section 526(a)(1) by intentionally failing to "prepare for and attend the 341 meeting of creditors" as set forth in their Post-petition contract of services.  Instead, unbeknownst to Debtor, they hired appearance counsel who was completely unprepared and lacked knowledge of the Debtor's case.

154.    The Defendants Jaafar/Fairmax and Burr violated section 526(a)(1) when they intentionally failed to review the Debtor's Schedules, Means Test, Statement of Intention and Statement of Financial Affairs with her prior to filing them on January 3, 2018.

155.    The Defendants Jaafar/Fairmax and Burr acted with conscious effort and reckless disregard to the Debtor's needs and their professional responsibilities and violated section 526(a)(1) when they intentionally failed to timely file the Debtor's schedules, statements and other documents.

156.    Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).

157.    Pursuant to section 526(c)(5), the Plaintiff respectfully requests that the Court issue injunctive relief and civil penalties, as appropriate, sufficient to ensure that Defendants cease and desist from future acts or omissions that either intentionally violate section 526, or that create a clear and consistent pattern and practice of violating section 526 as the result of the Defendants' failure to exercise reasonable care, including:

    (1)    making false representations regarding client review, approval and signature under penalty of perjury of documents filed with the Court;

    (2)    making false representations or forging of signatures, including electronic signatures, on documents filed with the Court;

    (3)    failing to perform services provided for in contracts;

    (4)    failing to properly train and supervise contract attorneys including "of counsel" and appearance counsel;

(5)    failing to properly communicate with assisted persons regarding unbundled services; and

(6)    failing to obtain true informed consent from an assisted person regarding the services the debt relief agency will or won't provide and the risks and benefits involved.

158.    Under the facts of this case, the Plaintiff respectfully requests that the Court enter an injunction prohibiting the Jaafar/Fairmax from filing petitions on behalf of assisted persons in the Bankruptcy Court for the Northern District of Illinois.

### COUNT 7: ISSUANCE OF AN INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 526(c)(5) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(2)

159.    The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

160.    Section 526(c)(5) of the Code provides in applicable part that:

Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal and State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern and practice of violating this section, the court may— (A) enjoin the violation of such section; or (B) impose an appropriate civil penalty against such persons.

11 U.S.C. § 526(c)(5).

161.    The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr violated section 526(a)(2) of the Code by intentionally making untrue statements in documents filed in the underlying case including, without limitation, by filing the petition, schedules and electronic declaration that falsely represent the Debtor's review and signature.

162.    The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr violated section 526(a)(2) with reckless disregard and failure to exercise "reasonable care" by allowing the filing of false documents

that were known or "should have been known" to not have been reviewed nor signed by the Debtor; such documents improperly purporting to have been reviewed, signed, and declared to be true and correct under penalty of perjury.

163. The Defendants Jaafar/Fairmax, Ienna and Jaafar violated section 526(a)(2) by failing to exercise "reasonable care" in failing to properly supervise "Of Counsel" attorneys, specifically Defendant Burr, by allowing with reckless disregard the filing of false documents that were known or "should have been known" to not have been reviewed nor signed by the Debtor, even though such documents were purported to have been reviewed, signed, and declared to be true and correct under penalty of perjury.

164. Upon information and belief the Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr have made untrue statements regarding signatures in multiple documents filed with the Bankruptcy Court for the Northern District of Illinois that strongly indicate the lack of review by the Debtor and have engaged in this clear and consistent pattern and practice of making untrue statements and affixing signatures on documents filed with the court in other bankruptcy courts including the Northern District of Ohio.  *See e.g. McDermott v. Jaafar Law Group, PLLC, et. al,* Bankr. N.D. Ohio, Adv. Case No. 18-01045.[9]

165. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

166.   The Plaintiff respectfully requests that the Court issue injunctive relief pursuant to 11 U.S.C. § 526(c)(5) sufficient to ensure that Defendants cease and desist from future acts or omissions that either intentionally violate section 526(a)(2) or else create a clear and consistent pattern

---

[9] This case is currently pending.

and practice of violating section 526(a)(2) as the result of the Defendants' failure to exercise

reasonable care, including: (i) failing to reasonably train and supervise attorneys; and (ii) falsely

representing signatures, including electronic signatures affixed to petitions and other

documents filed with the Court.

### COUNT 8: ISSUANCE OF AN INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 526(c)(5) FOR VIOLATIONS OF 11 U.S.C. § 526(a)(3)

167.   The Plaintiff incorporates the allegations contained in the preceding paragraphs of this

Complaint as if fully set forth herein.

168.   Section 526(c)(5) of the Code provides in applicable part that:

Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal and State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern and practice of violating this section, the court may—(A) enjoin the violation of such section; or (B) impose an appropriate civil penalty against such persons.

11 U.S.C. § 526(c)(5).

169.   The Defendants Jaafar/Fairmax, Ienna, Jaafar and Burr violated section 526(a)(3) and failed

to supervise support staff and counsel in their communications with the Debtor.   Defendants

failed to obtain true informed consent by misrepresenting or intentionally omitting

information in their conversations with the Debtor regarding the limitations of the services

they would provide, the unbundling aspect of their contracts, and the benefits, risks and

adverse consequences of the Debtor's failure to agree to their Post-petition services contract.

170.   The Defendants Jaafar/Fairmax, Jaafar, Ienna, Burr, Banyon and Carter acted with reckless

disregard to the Debtor's needs and their professional responsibilities and violated section

526(a)(3) by intentionally omitting information and failing to disclose to the Debtor the

identity and affiliation of the individual who would be appearing at the meeting of creditors and their lack of familiarity with her case.

171.   The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr violated section 526(a)(3) by misrepresenting or intentionally omitting information from the Debtor by filing documents with the bankruptcy court that she had never reviewed or signed, and failing to review those documents with her in advance of the meeting of creditors.

172.   The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr acted with reckless disregard to the Debtor's needs and their professional responsibilities and violated section 526(a)(3) by failing to timely file the Debtor's schedules, statements and other documents.

173.   The Defendants Jaafar/Fairmax, Jaafar, Ienna and Burr acted with reckless disregard to the Debtor's needs and their professional responsibilities and violated section 526(a)(3) by misrepresenting that they would attend the meeting of creditors, failing to provide adequate representation at the meeting, and intentionally failing to advise the Debtor that no one from Jaafar/Fairmax would be attending the meeting of creditors with her.

174.   Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).

175.   The Plaintiff respectfully requests that the Court issue injunctive relief sufficient to ensure Defendants cease and desist from future acts or omissions that either intentionally violate section 526(a)(3) or else create a clear and consistent pattern and practice of violating section 526(a)(3) as the result of the foregoing.

**COUNT 9: REQUEST FOR SUSPENSION OF PRIVILEGES TO FILE DOCUMENTS ELECTRONICALLY, REQUIRE SELF REPORTING TO THE ARDC, AND ETHICS/PROFESSIONAL RESPONSIBILITY TRAINING**

176.    The Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

177.    The Northern District of Illinois U.S. Bankruptcy Court Local Rule 5005-1(A) adopts Administrative Procedures to permit filing, signing, service and verification of documents by electronic means. *Cf.* Fed. R. Bankr. P 5005(a)(2).

178.    The Northern District of Illinois U.S. Bankruptcy Court Administrative Procedures for the Case Management/Electronic Case Filing System ("ECF") for the Northern District of Illinois provides:

II.C. Signatures
II.C.1. Original Non-Attorney Signatures

When an individual other than a Registrant is required to sign a document that is filed electronically, the Registrant shall include in a single filing with the document a scanned or otherwise electronically replicated copy of the document's signature page bearing the individual's original signature. By filing the document and signature page, the Registrant declares under penalty of perjury that the scanned signature was part of the original document. Once a document has been properly filed under this subsection, the original document bearing the individual's original signature need not be retained. The scanned signature may then be used with the same force and effect as the original signature under these rules and for any other purpose for which a signature is required in proceedings before the court.

II.C.2. Original Attorney Signatures

By using the Password to make an electronic filing, a Registrant is deemed to affix the Registrant's signature to the document for all purposes, including Fed. R. Bankr. P. 9011. Each filing must indicate a signature by the designation /s/, followed by the typed name of the Registrant. The typed name must be the name of the Registrant filing the document. Registrants who are attorneys must also include their complete mailing address, telephone number, and the name of the party the attorney represents. If the identifying information appearing in a document filed via the Internet is inconsistent with the identifying information supporting the Password with which the document was filed, the identifying information in the document will be disregarded, and the Registrant is responsible for the document for purposes of Fed. R. Bankr. P. 9011 and all other purposes.

179. The Court may restrict or revoke a user's ECF credentials.   ECF credentials are a privilege; the Court's suspension or revocation of a privilege is not the same as the imposition of sanctions.

180. The Court retains inherent authority to restrict a registered user's ECF credentials for cause.

181. Upon information and belief, Defendants Burr, Banyon and Carter are all registered users of the Case Management/Electronic Case Filing System ("ECF") for the Northern District of Illinois.

182. To date, both Defendants Banyon and Carter have failed to comply with Local Rule 2016-1 requiring disclosure of every agreement between a debtor and an attorney for the debtor that pertains, directly or indirectly, to compensation paid.   *See also* Fed.R.Bankr.P 2016.

183. Upon information and belief, Burr and Jaafar/Fairmax support staff have used the ECF system and filed documents in the underlying case and in other cases in the Northern District of Illinois falsely purporting to have been reviewed and signed by the Debtors.   By way of example and not limitation see **Exhibit U**.

184. On information and belief, Jaafar, Ienna and Burr either directed and/or consented to, knew or should have known, and negligently supervised or patently ignored evidence that documents were being filed using Burr's ECF registration and password with little or no review, and with false representations of wet signatures, presumably to generate revenue for Jaafar/Fairmax.

185. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

186.   Under the facts outlined above, the Plaintiff respectfully requests the Court require Burr to

self-report his conduct to the ARDC and suspend the ECF credentials of Burr until, at a

minimum, he obtains at least three hours of professional responsibility training.

187.   Under the facts outlined above and in the preceding paragraphs of this complaint the Plaintiff

requests that Defendants Banyon and Carter, who frequently appear as "coverage counsel,"

be required to obtain at least three hours of professional responsibility training, certify

completion of this to the Court, and file Rule 2016 disclosures in the underlying case and in

all future cases in which they appear and are compensated.

## COUNT 10: REQUEST FOR INJUNCTIVE RELIEF AND SANCTIONS
## UNDER 11 U.S.C. §§ 105(a) AND 707(b)(4)(D)

188.   The Plaintiff incorporates the allegations contained in the preceding paragraphs of this

Complaint as if fully set forth herein.

189.   Section 707(b)(4)(D) of the Code provides in applicable part that:

> The signature of an attorney on the petition shall constitute a certification that the
> attorney has no knowledge after an inquiry that the information in the schedules
> filed with the petition is incorrect.

190.   Section 105(a) of the Code authorizes the Court to "issue any order, process, or judgment that

is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

191.   The electronic "/s/" signature of Defendant Burr affixed to the various bankruptcy

documents and disclosures constitute a certification that the attorney has no knowledge after

an inquiry that the information is incorrect.

192.   On information and belief, Defendants Burr, Jaafar and Ienna violated section 707(b)(4)(D)

by directing and/or recklessly failing to supervise and allowing Jaafar/Fairmax staff to place

the electronic signature of Burr on documents filed with the court without review or inquiry by Burr as required by section 707(b)(4)(D).

193.    The Plaintiff respectfully requests that the Court issue injunctive relief sufficient to ensure that Defendants cease and desist from filing future bankruptcy cases that lack the certification required in section 707(b)(4)(D).

194.    The Plaintiff respectfully requests that the Court issue injunctive relief sufficient to ensure that Defendants cease and desist from future acts or omissions that violate section 707(b)(4)(D) including:

(a)    making false representations regarding client review, approval and signature under penalty of perjury of documents filed with the Court;

(b)    making false representations or forging of signatures, including electronic signatures, on documents filed with the Court; and

(c)    failing to properly train and supervise contract attorneys including "of counsel" and appearance counsel.

**WHEREFORE**, the United States Trustee respectfully requests that the Court grant judgment in favor of Plaintiff, and issue an order that incorporate all requests for relief set forth in the preceding paragraphs of this Complaint, and provides whatever additional relief may be required in law and equity.

Dated:   June 7, 2018

Respectfully submitted,

PATRICK S. LAYNG
United States Trustee

Office of the United States Trustee
780 Regent Street
Suite 304
Madison, Wisconsin 53715
(608) 210-5646

By:    _/s/ Debra L. Schneider_
DEBRA L. SCHNEIDER
Attorney for the United States Trustee